UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

_____

In re:

ERICK MANUEL ORTEGA-RIVERA,

         Debtor.

Case No. 22-01687-swd
Hon. Scott W. Dales
Chapter 13

_____/

MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
                Chief United States Bankruptcy Judge

On June 11, 2025, the court entered its Order to Show Cause (ECF No. 102, the "Show Cause Order"), directing Desirae N. Bedford, Esq., to appear at a hearing on July 1, 2025, in Grand Rapids, Michigan, and show cause why the court should not impose sanctions for failing to attend the June 10, 2025 hearings in the debtor's case. The court served the Show Cause Order on Ms. Bedford at numerous addresses, including the address on record in this case and with the Illinois State Bar, where Ms. Bedford maintains her law license and, at least at one time, an office.

At approximately 4:00 PM EDT on the eve of the show hearing, Ms. Bedford contacted the court to advise of a scheduling conflict, but given the late hour, the court did not adjourn the hearing. Later, approximately eight and a half hours before the show cause hearing -- at 2:28 AM EDT -- Ms. Bedford filed a Response to Order to Show Cause (ECF No. 113, the "Response").[1]

As with the hearings on last month's motion to dismiss her client's case and her client's own motion for authority to sell his residence, Ms. Bedford did not appear at the show cause hearing as ordered.

_____

[1] The court appreciates, but did not require, a written response.

Having carefully considered Ms. Bedford's Response, the circumstances prompting entry of the Show Cause Order in the first place, and the fact that Ms. Bedford no longer has any pending cases here, the court will terminate Ms. Bedford's electronic case filing privileges and require her to associate with local counsel in any future (or reopened) case, pending further order.

At the threshold, the court notes that the rules of the United States District Court for the Western District of Michigan govern an attorney's practice before the United States Bankruptcy Court. LBR 9010-1(a)-(b). Individual judges have authority to discipline members of the court's bar, short of suspension or disbarment -- sanctions that the local rules reserve for the Chief Judge of the United States District Court or her designee. *Id*.; W.D.Mich. LGenR 2.3(d). Correspondingly, as licensed professionals, counsel must also observe the rules of professional conduct, violation of which may give rise to attorney discipline or other remedies. *Cf. El Camino Res., Ltd. v. Huntington Nat. Bank*, 623 F. Supp. 2d 863, 876 (W.D. Mich. 2007) (looking to Michigan Rules of Professional Conduct for guidance on attorney ethics dispute).

In her Response, Ms. Bedford defends the merits of her representation of the Debtor, Mr. Ortega-Rivera, enumerating the main events in the case she helped him get through, and she makes three main points in defense of her failure to attend the last three hearings in the case. The court will address each point in turn.

First, Ms. Bedford intimates that the court ignored LBR 9010-1(b) by failing to "provide the required opportunity to respond in writing in advance, as contemplated by the local rule." Response at p. 1 (Roman I). This cannot excuse her failure to obey the Show Cause Order's clear mandate that she appear in person, and obviously nothing in the local rule forbids in-person hearings to consider attorney misconduct. As for having an opportunity to respond in writing, the ample interim between entry of the Show Cause Order on June 11, 2025, and the return hearing

three weeks later on July 1, 2025, afforded plenty of time to prepare a written response. The Show Cause Order in no way precluded Ms. Bedford from filing a written response, even one filed in the wee hours of the night: indeed, she has responded in writing. The court rejects Ms. Bedford's rule-based argument.

Next, she explains that on May 9, 2025, while serving as Mr. Ortega-Rivera's counsel (defending against the chapter 13 trustee's dismissal motion and prosecuting her client's sale motion) she discontinued her relationship with the entity she describes as her "former firm," Recovery Law Group ("RLG"). At that point, she seems to believe, her duties to Mr. Ortega-Rivera ceased. Again, the court disagrees.

Despite describing herself as Mr. Ortega-Rivera's counsel in court filings, including in the Response, she hints that RLG was the attorney of record, arguing that "it is important to note that the contract the debtor signed was with Recovery Law Group—not with me, Desirae Bedford." Response at p. 2 (Roman VII). She also states that, "I was not aware that the Court would treat me as the continuing attorney of record until the Order to Show Cause issued." *Id*. (Roman IV). Her own words refute her argument that RLG (and not Ms. Bedford) was attorney of record and expose a regrettable ignorance of the court's rules and the rules governing professional conduct generally.

Regardless of her misimpression of the effect of leaving her former firm, Ms. Bedford was the Debtor's counsel of record from the moment of her first appearance until the court approved the substitution of counsel on June 20, 2025. Her attorney-client relationship extended ten days beyond the hearings to consider the dismissal of her client's case and her own sale motion, which she filed to ward off the proposed dismissal just before leaving RLG's employ. *See* Order Approving Stipulated Motion for Substitution of Counsel for Debtor (ECF No. 108).

Attorneys who represent clients before this court cannot simply abandon their clients without seeking the tribunal's permission.  The rules of the United States District Court for the Western District of Michigan provide that by filing papers with the court on behalf of a client, as Ms. Bedford obviously has, she is "deemed an attorney of record" and the "[w]ithdrawal of [her] appearance may be accomplished only by leave of court."  W.D.Mich. LGenR 2.5; *see also* M.R.P.C. 1.16(b) (observing that lawyers who intend to discontinue the attorney-client relationship may do so, but only "after informing the client that the lawyer cannot [withdraw from representation] without permission from the tribunal for the pending case …"); M.R.P.C. 1.3 (Comment) ("[u]nless the relationship is terminated as provided in Rule 1.16, a lawyer should carry through to conclusion all matters undertaken for a client").

Suffice it to say that Ms. Bedford's separation from RLG did not terminate her obligations to Mr. Ortega-Rivera or the court.  For this reason, the court cannot excuse her failure to attend the dismissal and sale hearings -- the conduct that precipitated the Show Cause Order and reignited the court's disciplinary concerns based on past encounters and case law.[2]

She advances a final notice-based argument premised on the fallout from her separation from RLG, evidently to shift blame either to RLG or the court.  She contends that she did not get notice of the hearing on the trustee's dismissal motion, the sale hearing, or the Show Cause Order until the day before the July 1, 2025, return hearing, and then only because the chapter 13 trustee's office contacted her regarding the latter hearing.  Emphasizing her point, Ms. Bedford complains that after she parted ways with RLG:

- CM/ECF notifications continued to be sent to my former firm's email address;

- Mailed notice was sent to an outdated address and was returned as undeliverable;

---

[2] *See infra* at n. *5.*

● I did not receive any direct notice at my current address or via my current email.

Response at p. 3 (Roman VIII).  The short answer to these complaints, again, lies in court rules and procedures that Ms. Bedford ignores or, assuming awareness, flouts.

More specifically, as an attorney admitted to practice here, Ms. Bedford registered as a "Filing User" under the local Electronic Case Filing Administrative Procedures ("ECF Procedures").  In this and other cases she has filed motions and other papers electronically.  By registering as a Filing User she consented to receive notice and service electronically, by email, except for service of a summons and complaint (not relevant here).  ECF Procedures at I.C.5. Recognizing that attorney information may change, the court puts the onus on the attorneys or Filing Users to keep their accounts up to date, warning that "[i]f any information on the registration changes, i.e., mailing address, e-mail address, etc., it is the Filing User's responsibility to log onto the system and make the appropriate changes by accessing the 'Utility' menu and selecting 'Maintain Your ECF Account' (*See* Court's Web site)."  *Id.* at I.C.6.  To reinforce the point, the ECF Procedures plainly state that "[i]t is not the Court's responsibility to re-send or investigate returned e-mails not properly maintained by the Filing Users."  *Id.*

The court served all hearing notices and the Show Cause Order at electronic and physical addresses that Ms. Bedford herself provided to the Clerk and did not change.  In fact, according to the court's CM/ECF registration records, though Ms. Bedford left RLG in early May, she did not change her email address as a Filing User with this court until July 1, 2025, at 1:30 AM EDT, and still has not changed her mailing address with the court's filing system (which continues to list an address for RLG in Royal Oak, Michigan).  Similarly, according to the Illinois bar's website, Ms. Bedford still works for RLG using a mailing address on Michigan Avenue, in Chicago, Illinois,

and her now-outdated RLG email address.[3]  Likewise, her attorney registration records with the United States District Court similarly reflect the office and email addresses of her former employer in Royal Oak, Michigan.[4]

If Ms. Bedford did not receive notice of the dismissal and sale hearings or the return hearing on the Show Cause order at her current mailing or e-mail addresses, she has only herself to blame for not observing the court's rules and procedures and the rules of the Illinois Supreme Court.[5]

The court finds no excuse for Ms. Bedford's failure to tend to her client in connection with the dismissal and sale hearings, and no excuse for her similar failure to attend the return hearing as ordered.  The question of an appropriate remedy remains.

Because Ms. Bedford's disregard of her continuing duties to Mr. Ortega-Rivera put his bankruptcy relief at risk and flowed from her ignorance or disregard of the court's rules and the rules of professional conduct, the court is constrained to censure her.  In case she is not familiar with the applicable rule in her home state, today's censure likely triggers a self-reporting obligation and perhaps reciprocal discipline.  *See* Ill. Sup. Ct. R. 8.3(d) ("A lawyer who has been disciplined (including resignation in lieu of discipline or the equivalent) … as a result of an action brought before any body other than the Illinois Attorney Registration and Disciplinary Commission shall report that fact to the Commission."); Ill. Sup. Ct. R. 763 (Reciprocal Discipline).

---

[3] *See* https://www.iardc.org/Lawyer/SearchResults# (Attorney Registration and Disciplinary Commission's website visited July 2, 2025); *see also* Ill. Sup. Ct. R. 756(c)(5) ("Each attorney shall update required registration information within 30 days of any change, except for those attorneys relieved of the registration obligation pursuant to a provision of this rule.")  The deadline for Ms. Bedford to make this change passed on June 9, 2025, two days before the court served the Show Cause Order on her at her address of record in the state that licenses her to practice law.

[4] In the case file for Mr. Ortega-Rivera's case, on July 1, 2025, she belatedly added herself as an "other professional" with a mailing address on Decatur Avenue in an unspecified city in Indiana.  She demonstrates a remarkably cavalier attention to detail both in matters affecting her client's interests and her own.

[5] The court notes, but need not rely on, decisions from other courts involving allegations or findings that Ms. Bedford failed to comply with her professional responsibilities.  *Sweet v. Majors Law, PLLC (In re Shastal)*, Adv. No. 24-3033, 2025 WL 439075 (Bankr. E.D. Mich. Feb. 7, 2025); *In re Thomas*, 657 B.R. 613 (Bankr. C.D. Ill. 2024); *Matter of Fleming*, No. 21-40256, 2022 WL 2126964 (Bankr. N.D. Ind. Mar. 21, 2022); *Matter of Thompson*, No. 21-40267, 2022 WL 1003270 (Bankr. N.D. Ind. Jan. 4, 2022).

More practically, because Ms. Bedford's unprofessional conduct involves ignorance or disregard of the court's ECF Procedures, the court will revoke her filing privileges and strip her of her registration as a Filing User.  The ECF Procedures warn each Filing User, including Ms. Bedford, that "[f]ailure of any Filing User to abide by established Court guidelines and procedures for filing electronically, may result in the revocation of user access." ECF Procedures at I.C.3.  Her failure to update her email and mailing addresses promptly upon leaving RLG jeopardized her client's interests including his discharge.  But for the willingness of the chapter 13 trustee and substitute counsel, Steven Bylenga, Esq., to work with Mr. Ortega-Rivera and counsel for the proposed buyer, it seems likely that the proposed sale would have fallen through and the bankruptcy case would have been dismissed, without discharge.

If Ms. Bedford wishes to regain her privileges, she may file a motion for an order allowing her to pursue registration after completing the same training and other requirements that otherwise apply to a new user of the system.

Finally, Ms. Bedford's failure to attend three hearings without any legitimate excuse and her admitted disregard for local rules and procedures warrant additional relief in the form of an order requiring her to associate with local counsel in any future (or reopened) cases before the United States Bankruptcy Court for the Western District of Michigan.[6]  W.D.Mich. LGenR 2.4 ("If the law practice of an attorney practicing before the court is not located in proximity to the place where court is held, the court may—in its discretion—require the attorney to designate local counsel.").  Today's Memorandum of Decision and Order stands as the court's articulation of reasons supporting imposition of the local counsel requirement.

---

[6] The undersigned consulted with the other two bankruptcy judges, who concur in the imposition of the local counsel requirement.  This *en banc* determination will apply to any future (or reopened) cases in which Ms. Bedford appears as counsel, regardless of which judge is assigned to preside.  The Clerk should note this requirement in the court's records.

In fairness to Ms. Bedford, she is but one of several attorneys with offices within or outside this district whose professional standards do not meet the court's own, and who seem determined to avoid setting foot in a courtroom. The traditions of centuries of conducting judicial proceedings in open court have proved the wisdom of in-court hearings, and the federal procedural rules presumptively require the same. *See, e.g.,* Fed. R. Bankr. P. 5001(b) ("Every trial or hearing must be held in open court—in a regular courtroom if convenient."); *cf.* Fed. R. Civ. P. 43(a) (expressing preference for in-court testimony). Electronic conveniences, such as e-mail and Zoom (or similar applications) offer many advantages to the bench and bar, but are simply tools that each must carefully employ to meet the needs of the public. Proper deployment of these tools necessarily involves promptly updating electronic records and, at least in our district, appearing in court, *in person*, more often than not.

The court today is not referring Ms. Bedford to the Chief District Judge for possible suspension or disbarment, opting instead for more tailored remedies to encourage her to conform to professional standards. And, though today's Memorandum of Decision and Order is not quite a shot across the bow, it should serve as a reminder to Ms. Bedford and others that the judges of this district expect those who appear here to know and observe court rules and procedures, to read and obey court orders, and to attend judicial proceedings -- in person -- when the court requires it.

NOW, THEREFORE, IT IS HEREBY ORDERED that Desirae N. Bedford, Esq., is formally CENSURED.

IT IS FURTHER ORDERED as follows:

1.      The Clerk shall terminate the CM/ECF filing privileges of Ms. Bedford in this court, and Ms. Bedford is no longer a Filing User within the meaning of the ECF Procedures;

2.	After completing the training and meeting the requirements applicable to new users of the court's CM/ECF filing system, Ms. Bedford may seek relief from the ECF-related provisions of this Memorandum of Decision and Order, by written motion upon a showing of good cause;

3.	Pursuant to W.D.Mich. LGenR 2.4, in any case or adversary proceeding pending before the United States Bankruptcy Court for the Western District of Michigan, Ms. Bedford may not appear on behalf of any entity without first designating a natural person as local counsel, willing to serve as such, who maintains an office located in proximity to the place where court is held in that case or adversary proceeding under LBR 1014(a); and

4.	Ms. Bedford may seek relief from the local counsel provisions of this Memorandum of Decision and Order by written motion upon a showing of good cause.


IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Desirae N. Bedford, Esq. (by CM/ECF and first class U.S. Mail at her address of record in this case), the Debtor, Steven Bylenga, Esq., and the chapter 13 trustee, and shall transmit a copy of this Memorandum of Decision and Order to the Assistant United States Trustee for this District by first class U.S. Mail.


END OF ORDER


**IT IS SO ORDERED.**

**Dated July 3, 2025**



Scott W. Dales
United States Bankruptcy Judge